**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ELVIRA SARIC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:20-CV-00414-NCC** |
| | ) | |
| **KILOLO KIJAKAZI,[1]** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the applications of Elvira Saric ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq.*  Plaintiff has filed a brief in support of the Complaint (Doc. 22) and Defendant has filed a brief in support of the Answer (Doc. 23).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

**I.  PROCEDURAL HISTORY**

Plaintiff filed her applications for DIB and SSI on November 14, 2016 (Tr. 80-81, 246-58).  Plaintiff's claim was denied on initial consideration and on reconsideration, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 114-15, 150-56, 173-74).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

After a hearing, by a decision dated February 22, 2019, the ALJ found the Plaintiff not disabled (Tr. 14-33).  On January 24, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-7).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2019, and has not engaged in substantial gainful activity since November 17, 2016, the alleged onset date (Tr. 16).  The ALJ found Plaintiff has the severe impairments of degenerative disc disease, degenerative joint disease of the bilateral knees, obesity, depression, anxiety, and post-traumatic stress disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17-21).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[2] with the following limitations (Tr. 22).  Plaintiff can occasionally climb ramps or stairs and stoop, but can never climb ladders, ropes, or scaffolds (*Id*.).  Plaintiff can never kneel, crouch, or crawl (*Id*.).  Plaintiff should avoid concentrated exposure to wetness and avoid all exposure to workplace hazards such as operational control of moving machinery and unprotected heights (*Id*.).  Her work is limited to simple, routine, repetitive tasks in a low stress job, defined as occasional simple work-related decisions, few if any workplace changes, and end of day production measurements (*Id*.).  The ALJ found that the Plaintiff is unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a).

economy Plaintiff can perform including ampoule sealer, addressing clerk, and document preparer (Tr. 30-32).  In doing so, the ALJ determined that Plaintiff has at least a high school education and is able to communicate in English (Tr. 30).  The job of ampoule sealer has a reasoning level of 1 and a language level of 1, the document preparer job has a reasoning level of 3 and a language level of 2, and the addressing clerk job has a reasoning level of 2 and a language level of 2 (Tr. 32).  The vocational expert testified that all three of the listed jobs could be learned by demonstration (*Id*.).  Thus, the ALJ concluded that Plaintiff has not been under a disability from November 17, 2016, through the date of the decision (Tr. 33).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id.*  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but

is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Id.*  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the commissioner's decision, Plaintiff raises four issues.  First, Plaintiff asserts the ALJ improperly determined that Plaintiff's alleged diabetes with neuropathy was not a severe impairment (Doc. 22 at 2-3).  Second, Plaintiff argues that the ALJ erred in his step five determination as she is incapable of performing jobs with a language level of 2 or with a reasoning level of 3 (*Id.* at 3-6).  Third, Plaintiff asserts that the ALJ erred in failing to properly evaluate the opinion of Dr. Sophia Grewal, M.D., Plaintiff's treating psychiatrist (*Id*. at 6-7).  Fourth, Plaintiff argues that the ALJ failed to properly consider the medical opinion evidence of record (*Id*. at 7-11).  For the following reasons, the Court finds that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A. Severe Impairment**

First, Plaintiff argues that the ALJ improperly determined that Plaintiff's alleged diabetes with neuropathy was not a severe impairment (Doc. 22 at 2-3).  Specifically, Plaintiff asserts that the ALJ improperly disregarded the diagnoses of diabetes with neuropathy from a February 21, 2018 visit with treating physician Dr. Austin Montgomery, M.D. ("Dr. Montgomery") (*Id.*).  Dr. Montgomery performed a consultative examination, during which he noted findings of pain and difficulty walking with diagnoses of diabetes mellitus with neuropathy, foot pain, high blood pressure, degenerative disc disease in the lumbar spine, pancreatic disorder, and neuropathy (Tr. 434-36).  Plaintiff asserts that the ALJ erred by not finding Plaintiff's diabetes with neuropathy to be a severe impairment and by not subsequently including limitations in the RFC because this evidence, in addition to Plaintiff's own reports and prescription for Gabapentin, supports a finding of a severe medically determinable impairment of diabetes with neuropathy (Doc. 22 at 3).

At Step 2, the Commissioner must determine whether a claimant has a severe impairment.  "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521, 416.921.  While a claimant has the burden of showing a severe impairment that severely limits his physical or mental ability to perform basic work activities, the burden "is not great" and "[t]he sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his] ability to work."  *Caviness*, 250 F.3d at 605.  Basic work activities are those "abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  The RFC determination is the most a claimant is capable of doing despite the combined effects of

both the claimant's severe and non-severe impairments.  *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

Only after a claimant establishes that she has a medically determinable impairment does the Commissioner determine whether the impairment is severe.  20 C.F.R. §§ 404.1521, 416.921. A "medically determinable impairment" is an impairment that results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques . . . .  [A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. §§ 404.1521, 416.921.  A claimant's statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment.  20 C.F.R. §§ 404.1521, 416.921.

The Court finds the ALJ's determination regarding Plaintiff's severe impairments to be supported by substantial evidence.  As previously indicated, the ALJ found Plaintiff to have the following severe impairments: degenerative disc disease, degenerative joint disease of the bilateral knees, obesity, depression, anxiety, and post-traumatic stress disorder (Tr. 17).  In so doing, the ALJ found that while Plaintiff alleged that she suffers from peripheral neuropathy associated with her diabetes, "the objective medical evidence does not support a finding of a medically determinable impairment" (*Id.*).  As noted by Plaintiff, she was prescribed gabapentin starting on February 6, 2018 (Tr. 364, 438, 496).  Plaintiff was also diagnosed, as addressed above, with neuropathy including from her treating healthcare providers (*See, e.g.,* Tr. 507, 633). However, the ALJ considered the lack of objective findings to support Plaintiff's complaints of neuropathy from multiple medical providers, as well as the lack of nerve conduction testing to objectively support such as diagnosis (Tr. 17, 396, 412, 503, 519, 522, 528, 633-50).  Indeed, upon a complete and thorough review of the medical record, any objective indicia of neuropathy

is missing from the record.  For example, in a September 2018 treatment note, Plaintiff's treating

nurse practitioner, Nurse Kathryn Ries, indicates that Plaintiff suffers from type 2 diabetes with

neuropathy, but finds Plaintiff to have grossly intact and bilaterally equal sensation, full range of

motion and no pain in her lower extremities, and full range of motion in her upper extremities

(Tr. 634-35).  The Court finds that substantial evidence supports the ALJ's determination that

Plaintiff's neuropathy is not a medically determinable impairment and an ALJ may omit alleged

impairments, like Plaintiff's neuropathy here, from his RFC finding when "[t]here is no medical

evidence that these conditions impose any restrictions on [the claimant's] functional

capabilities."  *Owen v. Astrue*, 551 F.3d 792, 801-02 (8th Cir. 2008).

**B. Language and Reasoning Levels**

Next, Plaintiff argues that the ALJ erred in his step five determination as she is incapable

of performing jobs with a language level of 2 or with a reasoning level of 3 (Doc. 22 at 3-6).

Specifically, Plaintiff argues that because she was born in Bosnia, was trained in her jobs in the

United States with a translator, and took her drivers' test in Bosnian that she is unable to meet

the requirements of the jobs with a language level of 2 which include having "a vocabulary of

5000-6000 words" and the ability to "read at a rate of 190 to 250 words per minute" (*Id.*).

Plaintiff further asserts that because the reasoning development level also requires an ability to

follow instructions and solve problems for satisfactory job performance that Plaintiff cannot

perform anything above a level of one in this area which involves only simple instruction in light

of her language abilities (*Id.*).

At Step Five of the sequential analysis, the Commissioner has the burden of production to

show evidence of other jobs in the national economy that can be performed by a person with the

claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  When, as is the case here, a claimant has

nonexertional limitations, vocational expert testimony is required for the Commissioner to carry her burden. *Id.* In questioning the VE, an ALJ must pose a hypothetical question which properly captures the concrete consequences of the claimant's deficiencies. *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001). "A vocational expert's testimony based on a properly phrased hypothetical question constitutes substantial evidence." *Goff*, 421 F.3d at 794. However, the VE's opinion is not binding on the ALJ[;] the ALJ must weigh a VE's opinion along with all other evidence. HALLEX I-2-5-48 (S.S.A.), 1994 WL 637379 (last updated Jun. 16, 2016).

Based on the vocational expert's testimony, the ALJ found that Plaintiff could perform the jobs of ampoule sealer (DOT[3] # 559.687-014), addressing clerk (DOT # 209.587-010), and document preparer (DOT # 249.587-010) (Tr. 30-32). The job of ampoule sealer has a reasoning level of 1 and a language level of 1, the document preparer job has a reasoning level of 3 and a language level of 2, and the addressing clerk job has a reasoning level of 2 and a language level of 2 (Tr. 32).

In this case, the Court finds that the ALJ has met his burden at step 5. According to the Program Operations Manual System (POMS) DI 25015.010(C)(1)(b), a "person is unable to communicate in English when he or she cannot speak, understand, read, or write a simple message in English." "Although the POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law, it is nevertheless persuasive . . . . The POMS explains the meaning of Social Security Act terms as well as the meaning intended by terms appearing within

---

[3] U.S. Department of Labor (4th ed. rev. 1991) (hereinafter "DOT"). The Social Security Administration takes administrative notice of the DOT. *See* 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).

the regulations." *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989)
(internal citations omitted).

   The ALJ properly concluded that Plaintiff was able to communicate in English at the
levels required for the representative jobs.  The ALJ noted, as relevant here, that Plaintiff's
counsel argued in a post hearing brief that these representative jobs had language requirements
beyond the Plaintiff's ability (Tr. 32).  The ALJ found this assertion to be without merit,
indicating his prior finding that "the evidence does not support a finding that [Plaintiff] is
incapable of understanding and communicating in English, particularly considering the language,
reading and reasoning requirements as explained by the vocational expert" (*Id.*).  In support of
his determination that Plaintiff could communicate in English, the ALJ noted that Plaintiff
testified at the hearing and was able to answer questions asked of her (Tr. 30).  Indeed, while
Plaintiff did request an interpreter for the administrative hearing, one was not present and she
was able to testify on her own behalf (Tr. 52).  During the hearing, as noted by the ALJ, Plaintiff
testified that she was able to read street signs, had previously gone to the store alone and read
things there, and had learned prior jobs by demonstration (Tr. 30-31, 59-60).  Further, during her
consultative examination with psychologist Daniel Van Ingen, Psy.D. ("Dr. Van Ingen"), in
January 2017, Plaintiff was able to provide a comprehensive medical and social history, and
demonstrated fluent speech intelligibility, a clear voice, and intact expressive and receptive
languages (Tr. 31, 419).  Dr. Van Ingen also noted that Plaintiff had no limitation in her ability to
understand and follow simple instructions and directions, and was only mildly limited in her
abilities to perform simple tasks and maintain attention and concentration for simple tasks (Tr.
31, 420).  Additionally, during the prescreening process for consumer directed care services in
June 2018, Plaintiff was noted to be fluent in English (Tr. 31, 597).  Similarly, on her review for

eligibility for MO HealthNet, it was noted that Plaintiff did not require an interpreter (Tr. 425).

In fact, in her Disability Report Plaintiff answered that she was able to speak and understand

English, and did not answer that she preferred Bosnian or needed an interpreter (Tr. 273).

Furthermore, the ALJ elicited testimony from the vocational expert concerning the level and

abilities required of the jobs he stated were compatible with someone of Plaintiff's age,

education, work experience, and RFC (Tr. 32, 67-69).  The vocational expert further testified that

the three unskilled jobs listed – ampoule sealer, addressing clerk, and document preparer – could

be learned by Plaintiff based on demonstration (Tr. 32, 71-76).  Accordingly, the Court find the

ALJ's step 5 determination to be supported by substantial evidence.

## C. Fully and Fairly Develop the Record

Third, Plaintiff asserts that the ALJ failed to fully and fairly develop the record.

Specifically, Plaintiff notes that her attorney submitted psychological records from treating

psychiatrist Dr. Sophia Grewal, M.D. ("Dr. Grewal"), and that the ALJ erred in not admitting

said records and not considering them in his decision (Doc. 22 at 6).  Plaintiff argues that there

were several references in the decision to the lack of psychiatric treatment in support of the

denial of benefits, and this error was not harmless as the absence of Dr. Grewal's records

provided part of the basis for the decision (*Id.*).

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record

fairly and fully, independent of the claimant's burden to press [her] case."  *Snead v. Barnhart*,

360 F.3d 834, 838 (8th Cir. 2004) (citations omitted).  "Failing to develop the record is reversible

error when it does not contain enough evidence to determine the impact of a claimant's

impairment on [her] ability to work."  *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012).

"Reversal due to failure to develop the record is only warranted where such failure is unfair or

prejudicial." *Twyford v. Commissioner*, 929 F.3d 512, 517 n.3 (8th Cir. 2019) (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

During the hearing, Plaintiff's counsel indicated that he would be submitting additional records from Dr. Grewal (Tr. 14, 53).  The ALJ accordingly left the record open for an additional fourteen days following the hearing (Tr. 14, 53).  The ALJ noted in his decision that, "[n]o additional records were received from Dr. Grewal during the requested time period, nor did [Plaintiff's] representative request additional time to submit such documents" (Tr. 14).  At some point after the hearing, Plaintiff submitted additional records from Dr. Grewal dated from May 5, 2018 to September 24, 2018 (Tr. 41-47).  Indeed, it is unclear from the record exactly when the medical records were submitted.  *See* Tr. 39 (indicating that the records were submitted "subsequent[t ]to hearing").  A letter from November 7, 2018, within the 14-day window, appears to reference the records as being submitted to the ALJ in conjunction with it as a cover letter and post-hearing brief.  *See* Tr. 373 ("Thank you for holding the record open for treating notes from Sofia Grewal, M.D., treating psychiatrist, dated 5/7/2018 through 9/24/2018.  We do not expect to receive the Mental Medical Source Statement from her.").  The ALJ, as noted, did not address these records nor the medical source statement also submitted by Dr. Grewal and exhibited (Tr. 760-63).  The Appeals Council addressed the additional medical records, stating:

> You submitted medical records from Sofia Grewal, M.D[.,] dated from May, 2018 to September 24, 2018 (7 pages).  We find this evidence does not show a reasonable probability that it would change the outcome of the decision.  We did not exhibit this evidence.

The Appeals Council must consider additional evidence that is new, material, and related to the period on or before the date of the ALJ's decision as if it was presented to the ALJ.  20 C.F.R. § 404.970(b), 416.1470(b); *Whitney v. Astrue*, 668 F.3d 1004, 1006 (8th Cir. 2012).

In this instance, the Commissioner properly considered the additional evidence when the Appeals Counsel considered the report and determined that it would not have changed the outcome of the ALJ's decision.  In denying Plaintiff's Request for Review of the ALJ's decision, the Appeals Council considered the medical evidence from Dr. Grewal and determined that this evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision (Tr. 2).  An examination of Dr. Grewal's records show that they generally consist of minimal hand-scribbled notations briefly indicating Plaintiff's self-reported complaints (Tr. 41-47).  These treatment records also note findings that are inconsistent with disabling mental limitations, including appropriate appearance, cooperative behavior, no hallucinations or delusions, logical flow of thought, average memory, adequate insight and judgment, adequate energy and appetite, adequate attention and concentration, only a mild level mental illness, and a good prognosis (Tr. 42-45).  Therefore, as there is not a reasonable likelihood that these records would have changed the outcome of the decision, the Court finds that the Appeals Council, and thus the Commissioner, properly addressed the additional evidence.  *Hinchey v. Shalala*, 29 F.3d 428, 432-33 (8th Cir. 1994) ("To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which the benefits were denied, and there must be a reasonable likelihood that it would have changed the Secretary's determination.").  *See also Whitman v. Colvin,* 762 F.3d 701, 708 (8th Cir. 2014) (internal citation marks and quotations omitted) ("Material evidence is non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's determination.").

**D. Medical Opinion Evidence**

Finally, Plaintiff argues that the ALJ failed to properly consider the medical opinion evidence of record (Doc. 22 at 7-11).  Specifically, Plaintiff asserts that the ALJ erred in his evaluation of the opinion of Plaintiff's treating nurse practitioner, Kathryn Ries, N.P. ("Nurse Ries"), failed to consider Plaintiff's need for home health assistance as supported by the statement of Dr. Montgomery, failed to explain his reasoning for affording the opinions of consultative examiner Vijay Raj, M.D. and state agency physician Minerva Hernandez, M.D. "some weight" and how these opinions supported his RFC determination, and failed to address the opinion of Dr. Grewal.

**1. Opinion of Nurse Ries**

First, Plaintiff argues that the ALJ improperly discounted the opinions rendered in the RFC assessment of treating nurse practitioner Nurse Ries from September 10, 2018, and accorded them only little weight (Doc. 22 at 8).  In a Physical Residual Functional Capacity Questionnaire dated September 10, 2018, Nurse Ries opined that Plaintiff could sit for thirty minutes at a time; stand less than five minutes at a time but had to get up to walk every five minutes; stand or walk less than two hours per workday; would require elevation of her feet at 45 degrees at least half of the day; could only occasionally look up, down, or to the side; and would miss more than four days per month due to her impairments (Tr. 444-45).  Nurse Ries further opined that Plaintiff requires the use of an assistive device (Tr. 445).

As a preliminary matter, Plaintiff implies that Nurse Ries qualifies as a "treating source" (Doc. 22 at 7-8).  Plaintiff correctly asserts that the Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  However, to be a "treating source" under

these rules, a source must be an "acceptable medical source." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). *See also* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight."); *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) ("[O]nly acceptable medical sources can be considered treating sources."). For purposes of claims such as Plaintiff's filed before March 27, 2017, nurse practitioners are not considered "acceptable medical sources." 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7); *see also Blackburn v. Colvin*, 761 F.3d 853, 859 (8th Cir. 2014). Thus, Nurse Ries is not considered a "treating source" whose opinion is entitled to controlling weight. As such, the ALJ had the option, within his discretion, to consider Nurse Ries's opinion so long as it was not wholly inconsistent with other opinions from Plaintiff's treating physicians. *Crawford v. Colvin*, 809 F.3d 404, 408 (8th Cir. 2015).

The Court finds the ALJ properly evaluated Nurse Ries' opinion. The ALJ afforded Nurse Ries' opinion "little weight" finding it not to be supported by or consistent with the record as a whole (Tr. 28). Specifically, the ALJ noted that there is no support for the contention that Plaintiff required the ability to change from sitting to standing after short periods of time, particularly in light of the imaging of her lower back (Tr. 28, 756), a lack of support for the Plaintiff needing foot elevation due to only one allegation of mild edema (Tr. 28, 413, 508, 645, 702), no evidence in the record of issues with the cervical spine (Tr. 28), and no evidence to support the contention that Plaintiff would be absent more than four days per month due to her impairments (*Id.*). Separately, the ALJ considered Plaintiff's alleged need for an assistive device and found no evidence that such a device was medically prescribed, though Plaintiff did sometimes exhibit an antalgic gait or slight limp (Tr. 24, 412, 744). The ALJ noted that on

January 10, 2017, Dr. Vijay Raj indicated that Plaintiff used no assistive devices at the time of

exam, but had a cane at home which she used occasionally (Tr. 24, 412).  Additionally, Plaintiff

admits that her assistive device was not prescribed (Doc. 22 at 8).  Plaintiff alleged difficulty

walking on multiple occasions, but as the ALJ noted, the only reference to a fall by Plaintiff is in

a September 10, 2018 visit with Nurse Ries wherein she alleged weakness and falls due to back

and knee pain, but in the same visit alleged "no gait issues or falls" (Tr. 24, 633).  An ALJ may

properly discount the opinion of a medical professional if it is inconsistent with the record as a

whole.  *See Grindley v. Kijakazi*, 9 F.4th 622 (8th Cir. 2021) (internal quotation marks omitted)

("When a treating physician's opinions are inconsistent or contrary to the medical evidence as a

whole, they are entitled to less weight.").

### 2. Home Health Care

Next, Plaintiff asserts that the ALJ failed to properly address how Plaintiff's need for

home health care was inconsistent with the conclusion that she was not disabled and capable of

working full time (Doc. 22 at 9).  On February 21, 2018, state examining physician Dr. Austin

Montgomery, M.D. ("Dr. Montgomery") indicated Plaintiff had some difficulty walking and

determined Plaintiff had a disability preventing work (Tr. 433).  Then, on March 13, 2018, state

examining physician James Cook, M.D. ("Dr. Cook") also found that Plaintiff had difficulty

walking (Tr. 426).  Subsequently, Plaintiff qualified for home health services following her

evaluations by the state (Tr. 597).  The care plan provides for assistance with activities of daily

living (ADLs) including cleaning, bathing, medication set up, cooking, dressing, etc. (*Id.*).

The ALJ properly considered Plaintiff's use of home healthcare services in his RFC

determination.  "Because a disability determination by another government agency is based on

the government agency's own rules and not on social security law, it is not binding on the

Commissioner." *Dean v. Berryhill*, No. 1:16-CV-57-SPM, 2017 WL 2277188, at *8 (E.D. Mo. May 25, 2017) (citing 20 C.F.R. §§ 404.1504, 416.904).  The ALJ considered Plaintiff's use of a home health worker both in his review of Plaintiff's impairments and RFC determination (*See* Tr. 19, 22) and, as it relates to Plaintiff's argument, found that Plaintiff had severe impairments of obesity, degenerative disc disease and degenerative joint disease and limited her RFC to a less than sedentary exertional capacity (Tr. 30).  Further, the ALJ acknowledged Plaintiff's limitations regarding her ability to stand or walk for long periods of time, kneel, crouch, crawl, stoop, and climb ropes, ladders, and scaffolds (*Id.*).  In making this determination, the ALJ reviewed the assessments for home healthcare, specifically noting the June 2018 assessment with John Reed indicating that Plaintiff had one fall in the last thirty days (Tr. 24, 606-22).  The ALJ discounted the assessment as there was "no indication of the source of this information" (Tr. 24).  With respect to the findings of Dr. Montgomery and Dr. Cook, an ALJ may properly discount an opinion consisting of only vague and conclusory statements.  *See Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014).  Additionally, as previously mentioned, the ALJ is entitled to weigh the evidence as the fact-finder.  *Masterson*, 363 F.3d at 736.  Regardless, as addressed in more detail throughout this opinion, the ALJ considered and discussed the underlying medical evidence and explained his reasoning for his RFC determination and subsequent conclusion that Plaintiff was not disabled under Social Security rules and regulations.  *See Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006).

### 3. Opinions of Dr. Vijay Raj and Dr. Minerva Hernandez

Plaintiff next argues that the ALJ failed to explain his reasoning for affording the opinions of consultative examiner Vijay Raj, M.D. ("Dr. Raj"), and state agency physician Minerva Hernandez, M.D. ("Dr. Hernandez") "some weight" and how these opinions supported

his RFC determination (Doc. 22 at 10).  Of relevance to Plaintiff's assertion, on April 3, 2017,

Dr. Hernandez completed a residual functional capacity assessment in which she opined that

Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand or walk for four

hours in an eight-hour work day; sit for about six hours in an eight-hour work day and frequently

climb stairs, balance, stoop, and crawl (Tr. 123-26).  On January 10, 2017, Dr. Raj conducted an

internal medicine examination and produced a report addressing Plaintiff's physical impairments

(Tr. 410-13).  Drs. Hernandez and Raj observed Plaintiff had a mild limp and needed assistance

getting off the examination table (Tr. 125, 412).  Dr. Raj also noted intact sensation, reflex, and

extremity strength along with reduced range of motion in the lumbar spine but, as noted by the

ALJ, did not opine as to Plaintiff's limitations (Tr. 28, 412, 414).

The ALJ properly afforded "some weight" to the opinions of consultative examiner Dr.

Raj and state agency consultant Dr. Hernandez (Tr. 28).[4]  While the ALJ noted the consistency

of these opinions with the medical evidence, he also took into account updated imagery of

Plaintiff's spine and the recommendation from her orthopedic doctor that she required surgery

(Tr. 28, 756).  As such, the ALJ afforded the opinions of Dr. Raj and Dr. Hernandez "some

weight," and included further limitations in his assessment of Plaintiff's abilities for the RFC (Tr.

28).  It is the function of the ALJ to weigh conflicting evidence and to resolve disagreements

among physicians.  *See Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014).  The ALJ was not

required to adopt, distinguish, or discuss every limitation set forth by either or any doctor, as

weighing the evidence was his duty as the fact-finder.  *Masterson*, 363 F.3d at 736.

Accordingly, the Court finds that there was substantial evidence to support the ALJ's weighing

of this opinion evidence.

---

[4] The ALJ inadvertently identifies Dr. Hernandez as Dr. Minerva Harris, M.D. (*See* Tr. 28).

### 4. Opinion of Dr. Sophia Grewal

Finally, Plaintiff asserts that the ALJ erred by failing to consider treating psychiatrist Dr. Grewal's February 2018 opinion indicating Plaintiff had marked limitations in several areas of psychological functioning (Doc. 22 at 10-11).  In a medical source statement, Dr. Grewal opined that Plaintiff had extreme limitations in her ability to work a full day without needing more than the allotted number or length of rest periods (Tr. 761).  She further opined that Plaintiff had marked limitations in her ability to initiate and complete tasks in a timely manner; ignore or avoid distractions; use reason and judgment to make work related decisions; understand and learn terms, instructions and procedures; function independently; distinguish between acceptable and unacceptable work performance; regulate emotions, control behavior and maintain wellbeing in a work setting; and keep social interactions free of excess irritability, argumentativeness, sensitivity or suspiciousness; respond appropriately to requests, criticism, suggestions, corrections and challenges (Tr. 760-62).  Additionally, Dr. Grewal noted that Plaintiff had moderate limitations in her ability to sustain ordinary and regular attendance; follow one or two step oral instructions to carry out a task; ask simple questions or request help; and maintain socially acceptable behavior (*Id.*).  Finally, Dr. Grewal opined that Plaintiff would work more than 31% slower than the average worker, would miss work, be late, or leave early more than three times per month, and could not work with coworkers or for supervisors (*Id.*).  Of note, Dr. Grewal provided this assessment at the commencement of care, rather than after establishing a treatment relationship with Plaintiff (Tr. 763)

Although the ALJ did not specifically address Dr. Grewal's medical source statement, the Court finds the error in its omission to be harmless in this instance.  An error is harmless when the ALJ would have reached the same decision had the error not occurred.  *See Byes*, 687 F.3d at

917.  While the ALJ did not address Dr. Grewal's opinions, he did properly consider limited

mental health record and the opinions of psychological consultative examiner Dr. Daniel Van

Ingen, Psy.D. ("Dr. Van Ingen"), and Drs. Alan Harris, Ph.D. ("Dr. Harris") and Nancy

Dinwoodie, M.D. ("Dr. Dinwoodie") on behalf of the state agency (Tr. 28-29).  Dr. Van Ingen

opined that Plaintiff was not limited in her ability to understand and follow simple instructions;

mildly limited in her ability to maintain attention and attend a routine; moderately limited in her

ability to interact with others; markedly limited in her ability to concentrate, learn new tasks, and

cope with daily stressors (Tr. 420).  The ALJ properly noted inconsistencies between Dr. Van

Ingen's opinion and the rest of the record, and as a result afforded the opinion "partial weight"

(Tr. 29).  Drs. Harris and Dinwoodie opined that Plaintiff was mildly limited in her ability to

apply herself and understand, remember, and apply information; moderately limited in her ability

to concentrate, persist, and maintain pace; would have few social difficulties at work, but may

have difficulty coping with rapid changes (Tr. 87, 93-94, 103, 109-110, 121, 125-126, 137, 141-

142).  The ALJ properly found these opinions to be largely consistent with the evidence of

record, and as such were afforded "partial weight."  As the ALJ properly noted, having obtained

mental health treatment only recently, the record in this area was limited and Plaintiff's mental

status examinations were generally unremarkable (Tr. 30).  Indeed, at a visit on September 6,

2018, Plaintiff denied any past medical history with behavior health (Tr. 577).  Thus, the ALJ

limited Plaintiff to simple, routine, repetitive tasks and work in a low stress environment with

few workplace changes, occasional decision making, and end of the day production requirements

(Tr. 30).  Therefore, the Court finds the ALJ's failure to address Dr. Grewal's opinion to be

harmless error and the RFC determination to be based on substantial evidence.

## V.  CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 28th day of September, 2021.

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE